UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 16-80096-Civ-Middlebrooks/Brannon

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

vs.

NICHOLAS TOMS,

    Defendant.

_____/

**DECLARATION OF JOHN J. GRAUBARD IN SUPPORT OF
MOTION OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION
FOR ORDER TO SHOW CAUSE WHY DEFENDANT NICHOLAS TOMS
SHOULD NOT BE HELD IN CONTEMPT OF COURT
FOR FAILURE TO PAY DISGORGEMENT AND PREJUDGMENT INTEREST**

JOHN J. GRAUBARD declares under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am a Senior Trial Counsel employed by the Plaintiff Securities and Exchange Commission (the "Commission"). I am authorized to appear in this Court. I am over 18 years old and I believe in the obligations of an oath.

2. I am personally familiar with the facts set forth herein.

3. I am making this Declaration in support of the Motion of the Commission for an Order to Show Cause why the Defendant Nicholas Toms ("Toms") should not be held in contempt of Court for his failure to pay disgorgement and prejudgment interest.

**A.**    **The Entry of the Final Judgment against Toms**

4. On February 11, 2015 the Commission, deeming it appropriate, instituted cease-and-desist proceedings against Toms pursuant to Section 21C of the Exchange Act, 15 U.S.C. § 78u-3, based on allegations by the Commission's Division of Enforcement that Toms had violated

provisions of the federal securities laws.  *In the Matter of Nicholas Toms*, Securities Exchange Act Release No. 74261, Admin. Proc. File No. 3-16384 (February 11, 2015).

5. Toms submitted an Offer of Settlement of the cease-and-desist proceeding, and the Commission determined to accept Toms' Offer of Settlement and entered an Order Making Findings and Imposing a Cease-and-Desist Order Pursuant to Section 21C of the Securities Exchange Act of 1934.  *In the Matter of Nicholas Toms*, Securities Exchange Act of 1934 Release No. 76194, Admin. Proc. File No. 3-16384 (October 19, 2015) (the "Commission Order").

6. Based upon Toms' Offer of Settlement, in which he neither admitted nor denied the findings in the Commission Order, the Commission found that Toms, while the Chairman, chief executive officer, and president of DecisionPoint Systems, Inc. ("DecisionPoint"), a public company, owned and sold millions of shares of DecisionPoint's stock through a nominee and concealed it from investors.  Specifically, from November 2009 through at least mid-2004, Toms beneficially owned and sold more than 2.3 million shares of DecisionPoint's stock, using his long-time secretary as a nominee on an account that Toms controlled.  Toms concealed his true stock ownership and sales from the company, which consequently made materially false filings with the Commission.  Finally, Toms defrauded investors through these false filings, which materially understated Toms' ownership of DecisionPoint's stock and which led investors to believe that Toms was increasing this stock position when, in fact, Toms, the company's top officer, was selling substantial amounts of the company's stock.

7. The Commission Order found that by such conduct Toms had violated, and had caused DecisionPoint's violation of, Section 10(b) of the Exchange Act, 15 U.S.C. § 77j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, which make it unlawful for any person, directly or indirectly, to employ any device, scheme, or artifice to defraud, to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in

light of the circumstances under which they were made, not misleading, or to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

8.  Based upon the finding that Toms' conduct had violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, the Commission Order:

   a. Pursuant to Section 21C of the Exchange Act, 15 U.S.C. § 78u-3, ordered that Toms cease and desist from committing or causing any violations and any future violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5;

   b. Pursuant to Section 21C(f) of the Exchange Act, 15 U.S.C. § 78u-3(f), prohibited Toms, for five years following the date of the Commission Order, from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act, 15 U.S.C. § 78l, or that is required to file reports pursuant to Section 15(d) of the Exchange Act, 15 U.S.C. § 78o(d);

   c. Ordered Toms, within 10 days of the Commission Order, to pay disgorgement of $85,918, which represents profits gained as a result of Toms' conduct described in the Commission Order, and prejudgment interest of $16,953.40; and

   d. Ordered Toms, within 10 days of the Commission Order, to pay a civil money penalty of $175,000.

9.  Toms did not pay the full amount required by the Commission Order. On January 21, 2016 Toms paid a total of $39,549.32 credited against the amount of disgorgement and prejudgment interest he then owed. The Commission then brought an action in this Court to enforce the Commission Order, and on April 29, 2016 this Court entered, on Toms' consent, a Final

Judgment Compelling Toms to Comply with Commission Order and directing him to pay disgorgement and prejudgment interest of $64,489.79 (DN 25) (the "Final Judgment"). The Final Judgment specifically provides that if Toms failed to make payment by May 2, 2016 the Commission could enforce the Final Judgment as to disgorgement and prejudgment interest by moving for civil contempt, and/or by other collection procedures authorized by law.

**B.    Toms Fails to Pay Disgorgement and Prejudgment Interest as Ordered**

10.    Toms has not made any payment with respect to the amounts due for disgorgement and prejudgment interest under the Final Judgment.

11.    By the terms of the Final Judgment, Toms' payment was due on May 2, 2016.

12.    On May 6, 2016, I sent a letter to Toms enclosing a copy of the Final Judgment and stating that "As you may not have received notice of the Final Judgment, please make your payment by May 20, 2016." I further stated "If payment is not received by May 20, the Commission will take appropriate action to enforce the Final Judgment."

13.    Toms has repeatedly stated that he intended to pay the amounts due under the Final Judgment by refinancing his property. However, Toms then claimed that for various reasons the refinance did not occur. This is shown by the following e-mails from Toms or his counsel:

    a.    March 28, 2016 from Toms (Exhibit 1, including the attached commitment letter) - "Attached please find the draft commitment from Kennedy Funding which we are updating and re-executing later today."

    b.    March 29, 2016 from Toms (Exhibit 2) - "Attached please find the executed commitment letter for the mortgage from Kennedy Funding. You will see that I have requested a closing on or before April 19, 2016. With this in hand, could you defer the action pending payment in full of the settlement per our earlier discussion."

    c.      June 7, 2016 from Toms (Exhibit 3) - "Thank you for your time and forbearance this morning.  I confirm that I will call you on the morning of June 14 with an update on the mortgage application."

    d.      June 23, 2016 from Toms (Exhibit 4) - "We haven't quite closed but almost there."

    e.      June 27, 2016 from Toms (Exhibit 5) - "We are waiting for one item to close and pay the SEC off in full. It is an approval from the Home Owners' Association, which had a couple of comments and which we have addressed. They have promised us their consent for tomorrow. That being the case, we will notify the lender that we are ready to close and they will fund in 48hours. Could I prevail upon you and your supervisor to hold off on the filing until Friday, by which time you should have been paid off in full?"

    f.      July 5, 2016 from Toms (Exhibit 6) - "I am writing to update you. We are almost closed but may not make it today. If not I may need your indulgence for a further 48 hour extension somehow the lien search is probably not ready for another day. I do apologize but I will fiund [sic] the SEC electronically."

    g.      July 7, 2016 from Toms (Exhibit 7) - We are still waiting for the municipal lien search to come back, as you will see from my attorney's e-mail below. That is the last remaining to close on the mortgage. He was expecting at the beginning of this week and now thinks we could have it later today or tomorrow. He is doing everything he can to get the report back asap.  I am sorry to have to ask this like a broken record, but could I request your and

your supervisor's forbearance for five more days as we are so close to completion and the funds to pay off the SEC?"

h. July 11, 2016 from Toms (Exhibit 8) - "The lien search is done and the lawyers are readying their closing schedule now. I have asked my attorney, Richard Weinstein, to confirm their agrred [sic] closing time as soon as it is settled and communicate the same to you."

i. July 11, 2016 from Weinstein (Toms' attorney) (Exhibit 9) - "The municipal lien search is attached. We are ready to close once the lender is ready."

j. July 14, 2016 from Weinstein (Exhibit 10) - "The lender has requested that the land trust be revised to show a corporate trustee (rather than an individual), so we are re-applying for HOA approval with that change."

k. July 18, 2016 from Weinstein (Exhibit 11) - "The HOA will not approve the land trust. The HOA will not allow a non-individual to be the trustee, and the lender will not allow an individual to be a trustee. However, a new lender has been found willing to fund the refinance and will allow the loan to close in the owner's name; hence no trust is required. Since nearly all the pre-closing work has been done, a quick closing is anticipated. The lender's rep has advised it should close in about a week."

l. July 28, 2016 from Toms (Exhibit 12) - "We are all but done. I will have firm funding and closing dates late today or first thing in the am. Could we speak tomorrow morning if you are around or we can e-mail if not?"

m. August 4, 2016 from Toms (Exhibit 13) - "The mortgage broker who has been arranging the mortgage will have a firm closing date tomorrow

        morning. He tells me it is a matter of a few days. Could we give you that tomorrow from our attorney, Mr. Weinstein?"

n.    August 5, 2016 from Toms (Exhibit 14) - "It looks like next Wednesday or Thursday, August 10 or 11, 2016. We are getting confirmation from the lender now. I should have that shortly and will confirm back to everyone as soon as we get it."

o.    August 10, 2016 from Toms (Exhibit 15) - "My apologies for not getting back to you sooner. The lawyers are fixing the closing date today and will confirm that to you as soon as they have agreed."

p.    August 12, 2016 from Toms (Exhibit 16) - "My apologies. The final walk through by the lender, which is the last due diligence item, has been scheduled for next Tuesday, August 16, after which they will close. By copy of this I am asking Richard Weinstein to confirm closing and funding to you directly."

q.    August 12, 2016 from Weinstein (Exhibit 17) - "Assuming there are no problems with the walk-through, I understand the closing will take place the latter part of next week. Please bear in mind that there is a mandatory 3-day rescission period for the refinance of a primary residence before funding. Saturday is counted as one of the three days. Please provide a new payoff letter assuming a funding on Tuesday, August 23rd, with additional per diem."

r.    August 23, 2016 from Weinstein (Exhibit 18) - "We were all set to close on Friday, but the lender backed out at the last minute. We are resurrecting the bridge loan we were working on before the refinance lender came on the

scene and have also approached a "hard money" full refinance lender as well, but we don't have anything concrete as of this minute. As you are aware, we have been working very diligently to resolve the SEC's judgment, and we're confident we'll get there, but we're not there yet."

**C.     Toms' Ability to Pay the Final Judgment**

14.     The records of the Palm Beach County Clerk indicate that Toms is a co-owner of real property located at 2350 Cherry Palm Road, Boca Raton (Palm Beach County), Florida 33432. These records indicate the following:

   a.    By deed recorded on May 30, 2014 as CFN 20140200127, Book 26823, Page 1715, Nicholas Robert Toms and Caroline Mary Toms purchased this property from Clifford Robert Muir for the stated consideration of $3,550,000.

   b.    There does not appear to be any mortgage or lien upon this property.

15.     The records of the Palm Beach County Assessor indicate that as of January 1, 2015 this property has a total assessed value of $2,944,145. These records also indicate that this property was built in 2014 and that the building has a total square footage of 9,490. It further indicates that the property is improved by a built-in barbeque, in-ground pool, and patio. A copy of the Palm Beach County Assessor records for this property is attached as Exhibit 19.

16.     As of August 24, 2016, the amount due on the Final Judgment for disgorgement and prejudgment interest is $64,489.79 as ordered on April 29, together with postjudgment interest pursuant to 28 U.S.C. § 1961 at the rate of 0.54% in the amount of $111.54. Additional post-judgment interest continues to accrue on this amount at the rate of $0.95 a day.

17.     At no time has Toms stated to me that he does not have the ability to pay the disgorgement and prejudgment interest due under the Final Judgment.

I declare under penalty of perjury that the foregoing is true and correct. Dated as New York, New York, August 24, 2016.

        /s/ John J. Graubard  
        JOHN J. GRAUBARD  
        Senior Trial Counsel  
        S.D. Florida Bar No. A5501682